I'm sorry. Good morning, Your Honors, and may it please the Court. At the heart of this appeal are two claim construction issues, one dealing with the term inflation input and one dealing with the term complete hermetic seal. It's our position that the District Court urge, by construing inflation input in light of the accused device rather than in light of the patent itself, and that it erred in construing complete hermetic seal inconsistently, not only with the specification but with the prosecution history of the case. Let me deal first with inflation input. Intex urged that that term should be construed as meaning the end of the coupling or passageway most distal from the interior. Where does it say that in the claim? Your Honor, it doesn't say that in the claim. What the claim says is that you're going to have a valve disposed between the interior and the inflation input. In terms of airflow, isn't that always going to be true? The place where you input, you're going to input it, and that's somehow going to find its way through the valve to the interior of the air mattress, right? Your Honor, what the claim says is that the valve is between the interior and the inflation input. So the inflation input has to be at the top end of the valve. Why? You could recess the input, and that could somehow be below the valve, but the airflow passageway would nonetheless take you from input through the valve to the interior, and the valve between the interior and the input, right? Your Honor, not in light of the additional language in Claim 9, which is on page 10 of the Blue Brief, which requires that there be a general circular coupling. The coupling is defined in the patent as the element with threads on it that are permitted to be coupled to a pump. And the coupling has an open end defining the inflation input. You cannot recess the inflation input, because if you do, it won't be part of the coupling. The coupling having an open end defining the inflation input, and a flared end contiguous therewith. The only way, what the district court did was, it accepted Arrow's argument. Arrow said to the district court, if you construe it the way we want to construe it, then it will not read on the accused device. There's a quote on page 18 of the Blue Brief, which makes . . . I'm not sure that's your best argument, because I don't think that's what the judge did. But look at page 15 of the Blue . . . 15 of the Blue Brief? Yeah. What you're saying is that you wanted to argue that the top of the cylinder defined by the Arrow air enters the valve here is the inflation input, whereas the district court refused to allow you to argue that, because it was inconsistent with the claim construction. And as I understand it, he was saying that the short inner cylinder with the flared end is the inflation input. Am I understanding this correctly? That's exactly correct. The district court construed it in light of our device, and because of our device, at the suggestion of Arrow, he did it not only at the Markman hearing, but repeatedly on pages two to six of our Gray Brief, we recount point by point. Every time we tried to say that the inflation input was the top outer cylinder, he said at Arrow's insistence that that was inconsistent with his claim construction. He had construed the claim to require that the inner cylinder be the inflation input because that was the only one that was contiguous to the flared end. Well, that is not so, because if you look at figures 15 to 19 of the patent, you will see that our definition complies completely with figures 15 to 19 of the patent, because in those figures, which are shown on page nine of the Blue Brief, you will see that the- Is there anything to suggest that these figures are the only embodiment that could be covered by the exclaim? That's what I'm suggesting, Your Honor, and if you look at- Is there anything in the language of the claim or the language of the patent that says we are confining ourselves to this embodiment and none other? There are two things, Your Honor. If you look at the patent, you will see that the language used in claim nine tracks the discussion of figures 15 to 19, but we don't even need to go there, because if you look at the language of the claim, claim nine itself, it cannot read on figures two and three. Why can it not read? Because one, the coupling has an open end defining the inflation input and a flared end contiguous therewith. That is not met in figures two and three. It also says the coupling at the open end has a smaller internal diameter than at the flared end. Why isn't that met in figures two and three? Because in figures two and three, the coupling at the open end has a larger internal diameter than at the flared end, and the only figures that track this language, both from the language in the spec and from the figures themselves, are figures 15 to 19. Now, we- Errol argues that we invited this error. Mr. Osterling? Can I ask you one thing? One thing I'm scratching my head on a little bit here. The district court interpreted the claim term inflation input to refer to the point where air enters the passageway. Yes, Your Honor. Now, that doesn't strike me as, on its face, incorrect. Your Honor, if that's all he did, I would agree with him. Okay. Now, that's what I want to ask you. In reading your brief, it really kind of picks up, I guess, at around page 19 or so. I didn't understand you. I mean, I read what you're talking about there, and then I looked at the portions of the appendix, and it really seems that you're not complaining so much about claim construction, but rather about the judge's evidentiary rulings and limitation of questioning at the trial. Your Honor, that's a position that Errol has taken. But it seems to be that way. Well, let me tell you why I disagree. Okay. The district court continually, both before the jury and in sidebars, took the position that he had already construed the claims to prevent the argument that the tall outer cylinder was the inflation input. While he construed the claim in the Markman ruling with the language you just referred to, which is very broad, he put a gloss on that language. He put a gloss on the language both with all of his evidentiary rulings, some of which were heard by the jury, some of which were heard not by the jury. The point is the evidentiary issues are totally intertwined with the claim construction issues. If I wanted to look in the record that we have in the appendix, I'm sure we don't have the whole record, but where would I see the judge instructing the jury on his claims construction? Your Honor. Well, there are two parts. One is the jury instruction itself. And the jury instruction itself. Well, that's up at 97. Is on page 97. But is that, I read that as a, right, but when was the jury told, here's how I construe inflation input? The jury was told that twice. Once in the jury instructions at the time A97 was given to the jury. And that's at the end of the trial? Yes, just before the jury retired. But it was also told on grade pages two to six, you will see that the court repeatedly said, I have construed the claims. And he said it in a way that made it clear. He construed it not to permit our reliance on the outer cylinder. Now, there is an evidentiary component to the issue. This is when he's involving the colloquy with Mr. McCoose. Yes. And the questioning of Mr. Frankel. Yes. Now, the answer is, if you look on pages two to six of our grade brief, you will see the sites page by page. And I'll just give you an example. The example on page three of the grade brief. But your complaint really is, I mean, your response to Judge Shull should be, yes, you are complaining about an evidentiary ruling, but he wouldn't let you introduce evidence at the top of the tall cylinder with the inflation input. And he did that because he issued a supplemental claim construction. That's your point, isn't it? That is my point, Your Honor. And the evidentiary ruling is totally intertwined with the claim construction. And the evidentiary ruling led to the claim construction. The evidentiary rulings were the gloss on his very broad claim construction. You're saying this is on the original claim construction. Your view is that the judge has left it at that. Whatever else you complain about in the case, you wouldn't be arguing claim construction on that point. In part, I'm arguing that. And let me just explain my answer. If you look just at the words, where the air enters the passageway, we wouldn't be complaining if there was no embellishment on it. That's what I meant. We might have other complaints. But in his Markman ruling on page A133, he explains what he meant by those words. You can only read his words in connection with what is on page 18 of our blue brief as meaning he was saying it couldn't be the short inner cylinder. It couldn't be the tall outer cylinder. It had to be the short inner cylinder. So what I'm saying is that his Markman ruling itself was a problem. He compounded the problem by repeated evidentiary rulings which are recited on pages two to six of our gray brief. And that led to what in effect was a rolling claim construction. He had this very broad language. And there are cases of this court that say you can't do that. You can't have a rolling claim construction. You can't construe... What is your... Excuse me, John. I don't want to jump in on you. No, that's all right. Time flies. I apologize. But what again... I want to make sure I understand. What again is your complaint with the construction of inflation input that is at A97? That's where it says the inflation input is where the air enters the passageway. My complaint... I realize you say that there was an improper elaboration or alteration of that. But just before you get to that, what is your problem with A97? My problem is that you cannot read those claims in a vacuum. You must read those claims in light of what the judge conveyed to the jury. And the judge... No, no, I understand. But if all the judge had said to the jury was this at A97... Your answer is yes. There's nothing wrong with the original claim construction. There's nothing wrong with those words. That's why... Yeah, okay. I have to thank Judge Dyke for putting me on the right path. That's why there are three of us. Colleagues help colleagues. In any event, I see I'm running into my... Do you want to say anything about the hermetic seals? Yes, I do. Our position on that is very simply... Substantial conflicts with complete. But does it? Notice, it's substantial when it's under low pressure conditions. And I can imagine that when you're inflating and the valve is flopping back and forth, that there is some substantiality. Notice the complete hermetic is following inflation after you have finished and sealed the thing up. Then it's complete. Your Honor, there are two aspects to this. One is indefiniteness, which you're addressing. No, it doesn't seem indefinite at all. It seems like the substantial is under low pressure conditions. The complete is following inflation. There are two different times and different situations. And it seems like the claim is completely definite. Your Honor, the district court interpreted the words complete, which is the issue in this case. What is complete hermetic seal? Interpreted it to mean a seal that does not require any additional parts to retain nearly or largely all of the air in the bed. And then their expert got up and said, Well, ours does that. It has some leakage. It leaks 13 out of 22 mattresses, but it's only a little. It's only a sixteenth of an inch drop to a seven-sixteenth of an inch drop. But the fact is, there's nothing supporting that claim construction. That claim construction, a complete hermetic seal, even under your analysis, Your Honor, would be something that's impervious to air. That isn't how the district court interpreted it. He said nearly or largely all of the air. But that's true of the ARF reference, which they tried to distinguish during prosecution by adding the word complete hermetic seal. It expressly said that there's some leakage. They put this term in there to distinguish ARF. And our claim construction does distinguish ARF. The district court's claim construction doesn't distinguish ARF because ARF also loses some air. Now, Arrow says, well, ARF had a lid, a lid 14. But the air that was lost in ARF is lost before that lid is sealed. So they still have some leakage. There's nothing in the specification to support that claim construction. Nothing. I have one question, just to switch gears for just a second here. I wanted to just ask you this before you sent in. On the willfulness issue, you're saying, as I understand it, that the evidence does not support a willfulness finding. And the argument is made in response that, well, this argument wasn't properly raised below by in-text. And if you look at 2251 and 53, this is the post-trial in-text motion. It seems that what in-text is complaining about are evidentiary rulings by the judge that, in in-text's view, improperly limited its ability to defend itself on the willfulness charge. And that theme seems to be repeated in the in-text supporting memo at 2256. I guess what I'm saying is, isn't there some merit to the argument that this issue wasn't properly raised below in the way it's being argued now? I will shock you by saying yes. As I prepared for this hearing, I came to that very conclusion that, in fact, the new trial argument on willfulness is not adequately supported below. And so what we are asking is, if this court changes the claim construction, agrees with us on any of the claim construction issues, that to the extent the case goes back down to the district court, there should be a new trial on willfulness because those issues are intimately related. The opinions in Mr. Berman's opinion letter could be impacted by this court's claim construction. I agree with you. You're saying, basically, in part, you're backing off of the claim. I am, Your Honor. I never thought I would do that, but I'm doing it today. Thank you, Mr. Dunner. Two, we will be restoring Mr. Dunner's three minutes of rebuttal time, so would you give Mr. Two three additional minutes, should he need to use it? Thank you, Your Honor. You may proceed. Your Honor, I'm just going to go right to the claim construction discussions with respect to inflation input. As Your Honor has recognized, there was nothing in the district court's claim interpretation that restricted the actual location of the term inflation. No, but there was, because when he got to the evidentiary ruling, at that point, nothing wrong with the original claim construction, but at that point, he said, no, no, the upper end of the cylinder can't be the inflation input. I won't let you ask about that. The question then becomes, is that interpretation correct? Your Honor, the district court's claim interpretation is correct on its face. It does not incorporate those limitations that the district court judged. You're not responding to my question. My question is, assuming that it's correct, that he wouldn't let them ask questions about whether the top of the cylinder was the inflation input because that wasn't consistent with the claim construction, is he correct that the claim should be construed to exclude the upper cylinder as the inflation input? Your Honor, the way I understand your question, we disagree that the district court prevented them from discussing that issue. In the record, the times that the district court... I understand, but let's just assume that we were to reject that hypothetically. Yes, Your Honor. Let's assume that he said originally the inflation input is where the air comes in, but it can't be the upper cylinder. Let's assume he said that. Is that a correct claim construction?  that is an incorrect claim construction, Your Honor. So the top of the cylinder could be the inflation input. It depends on what the cylinder is, but the claim construction itself, the claim language itself doesn't have the cylinder in it. Really, the claim term inflation input is dependent on the passageway. Okay, but I don't want to have a misunderstanding here. Are you saying that the inflation input can be the top of the cylinder? With respect to Claim 9, there are limitations that are in other terms of Claim 9 that specifically restrict where the passageway is defined in the claim. So without referring to the accused product, there could be a cylinder that is defined. Just to clarify for me now, the district judge didn't forbid them from asking these questions. He just said, please relate whatever you're talking about to my claim construction, right? And at that point, they stepped back and said, well, we're not going to do anything else. They could have conceivably said, fine, Your Honor, we will do exactly that. You said the claim is interpreted as inflation input where the air goes in. Look, the air goes in at the top of this cylinder. They could have done that, right? They didn't. They did not. They had full and fair opportunity to ask questions. Wait a minute. The way I read the record, he did say you can't ask that. Look at 1101. I'm looking at 1089. Maybe I'm in a different place. Yeah, I think 1101 is a clearer place where they try to ask if you can screw this portion of the device that is the tall top of the cylinder, the open end, would you agree with me that there's no infringement of this patent? And Arrow objected to that. Your client objected to that. And the judge says, no. He sustains the objection. He says, it's been construed to the contrary. That would seem to be a ruling by the judge that you can't ask whether the top of the cylinder is the inflation input. Your Honor, in the context of these discussions that were being had with the judge in the district court, the judge was being extremely vigilant here to make sure that the questions that were being asked were questions that did not confuse the jury. Here was a cross-examination of Arrow's expert with respect to the infringement issues. And if you look at the questions that were being asked at the bottom, for example, the question that Your Honor pointed out on 1101, page 394, at the bottom lines 22 to 24, the question is, now if you construe this portion of the device, he later goes on to say at 395, if you construe this particular, the judge thought that this was probably confusing the jury. The judge was very vigilant about this. Early on, he had warned before the cross-examination took place around 8. The question at the bottom of 395 is, if you construe this particular, if you identify this particular spot as the open end of the coupling out here, as a flared end, there's no infringement. Correct? Yes, Your Honor. And the judge says, sustains an objection to that because it's inconsistent with the claim construction. In other words, he's not allowing them to ask whether the upper end of the cylinder is the inflation input. Where the air comes. Yeah. Where the air comes in. Your Honor, they were able to present this argument at this point. As a matter of fact, later on... But what about this exchange? This is one example. He is refusing to allow them to ask whether the upper end of the cylinder is the inflation input. Isn't that correct? Your Honor, in this particular point, at what was happening at that part of the trial, he was being very vigilant and very careful. Was the answer that he wasn't allowing them to ask whether the inflation input was the top of the cylinder? No, Your Honor. I think he was being, he was warning counsel to be careful with the questions that he was asking. It's the same thing that happened earlier at 1089, isn't it? Where he says, you've got to compare this accused device to my claim interpretation. Just do that. And they don't. Yes, Your Honor. He was being very, very careful there. At the end of the day, Your Honor, the question was eventually asked of the expert over on 1105. 1105? Yes. A1105, around 412. Here, the question is asked at line 3. Line 3? Yes. Okay, would you agree with me that the valve stem right here is already in the coupling? The valve stem that's in the coupling the entire time? I'm sorry, Your Honor. We're referring now that this, all of this is with respect to this item that's on page 15 of the blue brief? Yes, Your Honor. It's a very similar reason that was used at the time. The answer, no, I disagree with you. There you are again calling everything that's black and large, which is the entire top plastic part that Your Honor has referred to as the coupling. He disagrees, the expert disagrees and that was the question that was essentially asked. What does that have to do with the inflation input, where the inflation input was? He was trying, what the counsel, what in Texas counsel was trying to do was get the experts  that the inflation input was at the very top of the tall outer cylinder, which is what they are arguing here today. Are you saying, Mr. Chiu, that if if counsel for in-tex had come in and said Mr. who, was it Mr. Frankel? Yes, Your Honor. Yeah, and said, Mr. Frankel, the judge has construed inflation input as the place where the air enters the valley,  Yes, Your Honor. If he had said that and then had said now, Mr. Frankel, tell me whether or not the judge had said that show me where it goes in. Tell me whether or not it goes in up here or show me where it goes in. Are you saying there would have been no problem with reference to this drawing? Yes, Your Honor. I mean, what I think Mr. Dunner seems to be saying, what I understand the in-tex to be saying is that maybe the question wasn't asked right, but in the course of sustaining an objection to a I think an albeit poor question, the judge altered the claim construction. I mean, do you see that as the argument that's being made? I do see that. It's been difficult for us to try to instill the various arguments that are in the appellate's brief with respect to the claim construction of inflation input. It has not been clear what exactly their construction was. I mean, I think what in-tex seems to be saying, and I'll be corrected on the rebuttal if I'm wrong, but seems to be saying that even though the judge didn't agree with Mr. Frankel, the objections and the judge's words, that the claim construction was something else. Your Honor, the final jury instruction that was given to the jury was consistent. Is what was it, 97? Yes, Your Honor. It's consistent. It doesn't mention anything else about the claim terms that are otherwise a hearing claim. If we were to construe this record barring questioning as to whether the upper end of the cylinder was the inflation input, do you agree that that would have been error? No, Your Honor. The district court, they never contested these evidentiary rulings. Furthermore, there's plenty of evidence with which plenty of opportunities that they could have had. No, but you're not answering my question. My question is, if we read this record as saying you may not have whether the top of the cylinder is the inflation input, would that have been error? No, Your Honor. We do not think that would have been error. Why not? Because, again, the district judge was exercising his discretion as far as the clarity of the questions, protecting the  input. No, but that's not responding to my question. I'm saying he's very clear. He says you can't ask because under my claim construction the top of the cylinder can't be the inflation input. If he says that, what's he wrong? Your Honor, I don't think he was wrong based on the clarity of the questions that were being asked. No, but that's not. I apologize, Your Honor. No, except that in the sphere of the candor we're seeing today, it's best that you accept the premise of the inflation input. No, Your Honor. Why not? Because those limitations do not appear in that claim construction. Can the  input be recessed so that it is actually below the valve? Yes. Would it still be disposed between the interior and  valve? Yes, it would, Your Honor. Because that's the path of the air flow? Yes. I think you just answered Judge Dyke's question. I apologize about that. I don't understand your question. And if Your Honor's have no further questions with respect to inflation input, I can move on to complete hermetic seal. With respect to complete hermetic seal, again, we think the Judge's claim construction was very straightforward. There was no additional parts that require mechanical limitations. And the syntax of the claim itself again supports that. Well, what's wrong with Judge Rader's construction effort to reconcile with this? With respect to complete hermetic seal. Yes, I understand Judge Rader's suggestion. He's suggesting it's not a mechanical limitation, but the substantial is referring to low pressure conditions, and the complete is referring to other conditions. What's wrong with that construction on the claim? Your Honor, there is no dispute as to what substantially hermetic seal means. It's a seal that is impervious to error or nearly so. With respect to complete hermetic seal, the claim itself sets out the parts of the adverb. That term itself is not related to the low pressure condition. Get back to your adverb adjective point. Yes, sir. That if it was substantially it would also be completely hermetic. You're right, Your Honor, yes. An adverb has to have an L-Y. If it's modifying the adjective,  it's modifying the noun. That's correct, Your Honor. If there are no further questions with respect to completeness, let me just touch on the waiver of the willfulness ruling with respect to whether the willfulness determination needs to be revisited at the district court. I think he's on your side. Why would you want to go there? Then I'll just stop that. Take the money and roll. Your Honor, I appreciate it. If there are no further questions, I'm finished. Thank you, Mr. Chiu. Mr. Gunner, you restored your rebuttal time. You have three minutes. I'd like to talk about the inflation input point just briefly. One is, I totally disagree with Mr. Chiu's position that the judge did not forbid in-text counsel from asking questions that Judge Dyke posed in his questions. If you look at two to six of the gray brief, you'll see what the judge does over and over again. What page? Pages two to six of the gray brief. At the bottom of page three, the court sustained Arrow's objection ordering in-text counsel to stop misstating the court's claim construction. You go to page four. The court agreed admonishing in-text counsel for going into the issue of whether or not the claims construction I have applied is erroneous. The court stated, I've now construed the claim and asking questions which would suggest that my construction is unfair. I don't think it's appropriate for you to have Arrow's expert juxtapose the claim itself and apply it to the device. Yes, I've done that. Okay, the objection is sustained. Over and over again he forbade questions key to the tall outer cylinder. I can see the objection being sustained here. Again, I'm still wrestling with this point. I don't see the judge here stating a claim construction. Is what you're arguing that the judge gave a construction earlier? Well, the inflation input is where air enters the passageway. If that's what we had we wouldn't have a problem. But is what you're saying is that the result of this is that the judge is not      making evidence removing the construction and not changing this claim construction but making evidence removing the construction and not changing the objection in a way that prevented Mr. McCoose from presenting his case? Your Honor, it is two things. It is that you just said and it is also implicitly a claim construction. The court kept saying I have already construed the claims. But what about the fact is at the end when the judge does give a construction that doesn't seem to be an objection to. The one at 97. Your Honor, there doesn't have to be an objection under the futility rule. I'm not saying under futility. I'm saying to the extent your point has merit about this colloquy that took place here, don't we have to view it nevertheless in light of the final instruction from the jury. Your Honor, just the reverse. You have to view the final instruction in light of what the judge has been saying all through the trial about what those words meant. The judge was telling the jury. The jury heard it. If you look at the appendix pages 2-6 of the gray brief, you will see that in earshot of the jury, the judge was saying don't ask that about the outer cylinder. I have already construed the claims to the contrary. What the judge             ask that about the outer cylinder. In earshot of the jury, the judge was saying don't ask that            don't ask that about the outer cylinder. In earshot of the jury, the judge was saying don't ask that about